## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**DANIEL EDWARD BROWN,** and
**SHIRLEY ANN BROWN,**

Debtors.

Case No. **00-12915-7**

---

**THOMAS E BOLAND,**

Plaintiff,

-vs-

Adv. No. **06-00138**

**DARCY M. CRUM, JOSEPH V.
WOMACK, RICHARD J. SAMSON,
WILLIAM M. KEBE, JR., ROSS P.
RICHARDSON, GARY S. DESCHENES,
DONALD W. TORGENRUD, JR.,
ROBERT G. DRUMMOND, DANIEL
EDWARD BROWN, SHIRLEY ANN
BROWN, JAMES A PATTEN, SHARON
R PRUITT, EARL D PRUITT, LAURA J
SANDSTROM, CLAYTON J
ARCENEAUX, KENNETH JOHNSON,
BRANDI L. HAZEN, GAYLE
RIDENOUR, DARREL S.
ARENSMEYER, EDWARD HANEL,
GARY LEE HANSEN, DONALD
LESTER BAILEY, PATRICIA ANN
ROBERTS, LYNNE M. JOHNSTON,
DEBORAH GAY HARDY, SHAWN
ROGERS, JOHN HENRY JONES,
LUCILLE L HAUGHTON,**

1

**WILLIAM JOHN KASUN, KEVIN DEAN HAYWORTH, KAREN LEE BAKER, ROBERT L SANDSTROM, RONALD JAY NELSON, STEVEN FRANK HEGAR, PAUL EARL KELLER, KENNETH J. HERMAN, EDDIE HEATH KIMMEL, OLIVER E. KINGREY, WENDY LEE HERTZ, JAMES M. BARRY, THOMAS SCHAFER, DELORES MAE NORALEZ, MARSHA LYNNE KIRCHNER, SHERRYL ANN HESS, CHRYSTAL M POPE, ANTHONY JOSEPH BATTELLO, VICKIE LYNN HEUSCHER, DARCY L. KOHLES, SHIRLEY M SCHLIEP, MARLENE SHARKEY, CHARLES THOMAS KOPP, BEVERLY J HICKS, KERWIN NICK KOSTELECKY, SUSAN RAE HIGHTOWER, IRIS M. LAFFOON, DUANE ARTHUR HOVLAND, KATHY I. OLSON, BARBARA A. ORR, RODNEY LEE HUNT, DALE P. JACOBS, MARILYNNE K LAFLEY, WILLIAM F. JASZKOWIAK, DONALD RAY LARSON, GERTRUDE JEAN PULST, ISABELLA MARGARET PAGE, TIMOTHY WATSON PAGE, DONNA J LAWSON, DENISE  JOHNSON, ROBERT CLYDE BIRCH, SHARON K BLACKHALL, ANDREA JEAN BLANCHARD, GARY  BOLTON, JANICE L.  LEGRESLEY, ADITYA PAMULAPATI, DEBRA KAY SHEA, TINA L SIMS, GERALD THOMAS SISLER, DAVID LLOYD SMERKOL, CHERYL L RASMUSSEN, JERRY LEPROWSE, JOE G. PARANTEAU, THOMAS O PARKER, DANIEL V. RAU,**

2

## MEMORANDUM of DECISION

At Butte in said District this 5th day of March, 2007.

Before the Court in this Adversary Proceeding is the "Motion for Summary Judgment and Interpleader Award of Entire Wombold Settlement Proceeds to Bankruptcy Estates" filed on January 29, 2007, by counsel for the Defendant/Trustees, Darcy M. Crum, Joseph V. Womack, Richard J. Samson, William M. Kebe, Jr., Ross P. Richardson, Gary S. Deschenes, and Donald W. Torgenrud, Jr. This Adversary Proceeding was commenced on December 5, 2006, when the Plaintiff filed a Complaint in Interpleader. The following day, the Plaintiff filed an Amended Complaint in Interpleader. Plaintiff was Class Counsel in a class action lawsuit captioned *Wombold v. Associates Financial Services Company of Montana, Inc. et al.*, Case No. BVD 00-888, which was filed on or about October 2, 2000, in the Montana Eighth Judicial District Court, Cascade County (hereinafter, "the Wombold Class Action"). Defendants Darcy M. Crum, Joseph V. Womack, Richard J. Samson, Ross P. Richardson, William M. Kebe, Jr., Gary S. Deschenes, and Donald W. Torgenrud, Jr. are each Chapter 7 Panel Trustees in the District of Montana; and Defendant Robert G. Drummond is the Standing Chapter 13 Trustee for the District. Such Defendants, hereinafter referenced collectively as "the Trustees", are the Trustees in certain Chapter 7 and Chapter 13 bankruptcy cases filed in the District of Montana.

### BACKGROUND

The Debtor/Defendants, Daniel Edward Brown and Shirley Ann Brown ("Brown"), are individuals who have previously filed a Chapter 7 bankruptcy proceeding in the District of Montana, and are also Plaintiff class members in the Wombold Class Action. Those individuals listed on Exhibit A, attached to the Plaintiff's Amended Complaint in Interpleader, have each,

3

prior to January 1, 2006, filed a Chapter 7 or Chapter 13 bankruptcy proceeding in the Bankruptcy Court for the District of Montana, are also Plaintiff class members in the Wombold Class Action, and are thus persons similarly situated with the Brown Defendants. Such persons (including the Browns) are hereinafter referenced collectively as "the Debtors."

The Wombold Class Action was brought on behalf of all persons who entered into loan agreements with Associates Financial Services Company of Montana ("Associates") during a specified class time period. All of the individuals identified on Exhibit A, attached to the Amended Complaint in Interpleader, were members of the class of borrowers that was certified by the Montana District Court in the Wombold Class Action. As explained in more detail by counsel for the Trustees, in October of 2000, James R. and Elizabeth Ann Wombold filed an action in the Montana Eighth Judicial District Court challenging Associates' policies and practices in marketing and making consumer loans in Montana. On or about September 25, 2002, the state district court certified the Wombolds' case as a class action to include all persons to whom Associates made a loan which was originated in the State of Montana during the time frame of January 1, 1995, through December 31, 2000. Stipulation for Settlement, ¶ 2, Appendix B, p.49.

The state district court granted the class action plaintiffs' motion for partial summary judgment on October 27, 2003, finding that Associates had violated the Montana Consumer Loan Act ("MCLA") [§§ 32-5-101 to -506], with respect to all second mortgage loans from January 1, 1995, through December 31, 2000, and those first mortgage loans made by Associates to Sub-Class members from January 1, 1995, through October 1, 1997. Associates appealed the judgment of the state district court to the Montana Supreme Court. In a decision entered

4

December 30, 2004, the Montana Supreme Court affirmed the district court's summary judgment ruling and remanded the case for a determination of the proper remedy to be afforded the real estate Sub-Class members for Associates' violation of the MCLA. *See Wombold v. Associates Financial Services Company of Montana, Inc*., 2004 MT 397, 325 Mont. 290, 104 P.3d 1080 ("Wombold Appeal").[1]

In the Wombold Appeal, the Supreme Court first found that the Wombolds, and the other class plaintiffs, had a limited private right of action to bring suit under the MCLA. The Supreme Court then turned its focus on whether Associates had violated the MCLA. To resolve this second issue, the Supreme Court had to first determine whether the fees and other charges assessed by Associates against the class action plaintiffs were interest or other costs. As noted by the Court, Associates imposed a charge on thousands of Montana loans, which charges were referred to as "points":

> The amount of the loan was advanced to the borrower, and Associates kept the points. The points were added to the amount owed, and thus the principal balance of the loan, upon which interest was charged, became the sum of both the points and the amount advanced, and the borrower paid simple interest on this amount. If the loan was paid early, or defaulted, there was no refund of the points that had been added up front.

*Wombold*, 2004 MT 397, at ¶ 26. If the so-called "points" were interest, no violation of the MCLA would arise because Associates, as a regulated lender, was allowed to charge any rate of interest that the market would bear. *Wombold*, at ¶ 50. However, the Court went on to find that

---

[1] As a note of interest, following the Supreme Court's December 30, 2004, remand, the 2005 Session of the Montana Legislature enacted various amendments to the MCLA. The amendments were made retroactive for a period of twenty years. However, the Legislature made a subsequent enactment that excepted from the 2005 amendments any loans that were the subject of a lawsuit filed before March 24, 2005.

the points were not interest, but rather, were a fee charged by Associates for making the loan.

*Wombold*, at ¶ 59:

> We conclude that the points charged on the loans in question are not interest; that is, they are not charged for the use, forbearance, or detention of money. Under the circumstances of this case and the provisions of the CLA, the imposition of a flat fee, computed as a percentage of the loan, bearing no direct relation to actual costs of specific services performed, front-loaded into the loan, which did not constitute a charge for the use of the lender's money over time, is not interest. These points are a fee charged by Associates for making the loan. By the express language of the CLA, Associates was prohibited from charging fees not explicitly authorized under the act, § 32-5-103(1), MCA; § 32-5-301(5), MCA. Charging the fee described, which we have called points, violates the CLA despite Associates' clever attempt to disguise such charge as interest.

*Wombold*, 2004 MT at ¶ 59. Based upon the foregoing, the Supreme Court held that the points were unauthorized fees prohibited under the MCLA. *Wombold*, at ¶ 59. The Supreme Court noted that because the points were "fees" and not "interest", Associates was exempt from a MCLA provision requiring a refund upon prepayment. *Wombold*, at ¶ 63. Rather, the loans were "interest-bearing loans, [which] by their very nature, do not require a refund of interest because, until it is earned, interest is neither charged nor collected." *Wombold*, at ¶ 63.[2] The Supreme Court declined to reach the issue of remedies under the MCLA, and did not reach Wombold's assertion that the loans should be declared void. *Wombold*, at ¶¶ 64-67.

Upon remand to the state district court, the Wombold action was settled for $25 million and, after expenses and fees, net settlement proceeds were distributed, with court approval, to

---

[2] Justice Rice, concurring specially, agreed that Associates had violated the MCLA. However, Justice Rice believed that the fees and charges referred to as "points" were permissible interest. Justice Rice reiterated the differences between "interest-bearing" loans and "add-on" loans and concluded that Associates was "bound by the provisions of the Act which apply to 'add-on' loans, including the necessity of refunding the appropriate portions of those assessments when the loan was paid off or otherwise re-financed." *Wombold*, at ¶ 76.

6

four groups of plaintiffs, with the largest share of the settlement going to real-estate secured loans

governed by the MCLA on which points were paid (that is, on the subclass that was the subject

of the Supreme Court's decision). The groups and their allotted distribution are summarized as

follows:

> **Group 1**, $16.5 million, MCLA real estate-secured loans on which points were paid;

> **Group 2**, $1 million, non-MCLA real-estate secured loans on which points were paid;

> **Group 3**, $ 250,000, real-estate secured loans on which no points were paid;

> **Group 4,** $ 1 million, loans not secured by real estate.

*See* Notice of Proposed Class Action Settlement, Appendix B, p. 48, 50-51, ¶ 5. In that Notice,

Appendix B, p. 48, 49, ¶ 2, the court noted:

> This action alleges that Associates engaged in improper practices in marketing and making consumer loans, primarily by selling unwanted credit insurance [packing] and by refinancing loans [flipping] to increase its fee income without benefit to borrowers. The action includes claims for fraud and misrepresentation on behalf of all Class Members. On behalf of certain borrowers whose loans were secured by real estate and who paid Associates "loan origination fees" or "points," the action includes a claim for violation of the Montana Consumer Loan Act. ...

The court further stated:

> Class Counsel believe that the plan of distribution described in Section 5 fairly distributes the Settlement Fund according to the strength of the claims against Associates. Most of the Settlement Fund is allocated to Group 1 loans because only with respect to those loans is there a potentially viable claim that the loans are void or that Associates should pay the borrowers twice the "loan origination fees" or "points" they paid based on the violation of the MCLA found by the district court and affirmed by the Montana Supreme Court. With respect to Group 2 loans, Class Members have claims for both wrongfully refinancing and improper sale of credit insurance; whereas, with respect to Group 3 and 4 loans, there is only a claim for improper sale of credit insurance. Much less is likely to be recovered on those claims, even if successful, than on the claim for violations of the MCLA, if eventually successful.

7

Notice of Proposed Class Action Settlement, Appendix B, p.48, 51, ¶ 6.  Thus, all claims were

settled on the basis of events occurring as of the time of closing – illegal points, wrongful

refinancing, and improper sale of credit insurance.  The settlement, however, did not affect the

terms of any loan agreement whose term had not expired, and those class members remained

obligated to pay their loans.[3]  Notice of Proposed Class Action Settlement, Appendix B, p. 48,

51, ¶ 7.

Administrative decisions were necessary to divide the funds among individual plaintiffs.

The money was allocated among Group 1 and 2 members based on a formula that took into

account the total amounts of interest and "loan origination fees" or "points" paid on the loans.

Settlement amounts for Groups 3 and 4 were divided equally among the loans on a "per loan

basis."  *See* Notice of Proposed Class Action Settlement, Appendix B, p. 48, 50-51, ¶ 5.  These

allocations were purely administrative; plaintiffs in some groups shared the funds equally, and

plaintiffs in other groups were assigned a share based on points and interest paid.  But the $25

million settlement was a lump-sum, and the court approved the distribution among the four

Groups based on events occurring at or before the time the loans closed.

Associates paid the agreed-upon settlement monies into the Wombold Settlement Fund.

As Class Counsel, the Interpleader Plaintiff herein, Thomas E. Boland, was responsible for

---

[3]  As explained in the Notice of Proposed Class Action Settlement, Appendix B, p.51, ¶ 7: "Some of the loans which are the subject of this Settlement remain open with CitiFinancial, Inc., that is, they have not been paid in full.  The purpose of this Settlement is to provide a one-time cash payment to Class Members . . . in exchange for the release of the Class Members' claims against Associates and defenses against enforcement of their loans.  The Settlement does not affect the terms of any loan agreement that is still in existence.  A Class Member whose loan(s) is still open, remains obligated to pay the loan, and CitiFinancial, Inc. may enforce it, in accordance with the terms of the loan agreement."

8

distributing funds from the Wombold Settlement Fund in accordance with the plan of distribution approved by, and subject to the continuing supervision of, the Montana Eighth Judicial District Court. Each of the Debtors listed on Exhibit A is a beneficiary of part of the settlement of the Wombold Class Action. Collectively, as of December 5, 2006, the Debtors' shares of the funds in the Wombold Settlement Fund totaled $2,125,175.47; which aggregate sum included $2,050,555.32 in principal settlement amounts attributable to the claims of such Debtors, plus interest in the amount of $74,620.15 accrued to November 30, 2006, on those settlement amounts.

As set forth in an Order entered by this Court on December 14, 2006, Plaintiff alleged in paragraph 17 of his complaint that "Plaintiff cannot resolve the conflicting claims, and is potentially exposed to inconsistent and/or multiple liability due to the conflicting claims of the Trustees and the Debtors listed on Exhibit A. Accordingly, it is necessary and appropriate that the funds subject to the conflicting claims be interpleaded pursuant to Bankruptcy Rule 7022, and made subject to the control of this Court pending resolution of the conflicting claims." Plaintiff further alleged in paragraph 19 of his complaint that "To facilitate [the Bankruptcy] Court's assumption of control over the funds that are subject to the conflicting claims, Plaintiff has arranged with First Interstate Bank of Missoula to create an interest-bearing account separate from the Wombold Settlement Fund into which such funds in conflict would be transferred, if the Court so orders." Based upon the foregoing and for cause, the Court ordered the Plaintiff and the Bankruptcy Clerk of Court, Bernard F. McCarthy, on behalf of the U.S. Bankruptcy Court of the District of Montana, to coordinate, create and open by transfer a separate, interest bearing account in the name of "Clerk, U.S. Bankruptcy Court for the District of Montana" with First Interstate Bank of Missoula for the principal amount of $1,948,221.13 plus additional interest

9

accrued to the date of delivery of the funds to the new account with terms consistent with the terms negotiated for the Wombold Settlement Fund account; and that any disbursements from the new account representing the conflicting claims referenced above established in the name of "Clerk, U.S. Bankruptcy Clerk of Court for the District of Montana," be subject to subsequent orders of this Court.

The parties to this action agree that the appropriate allocation and distribution of the Wombold Settlement Funds attributable to the debtors listed on Exhibit A to the Amended Complaint in Interpleader are matters properly to be determined by this Court, and the Trustees have filed numerous motions requesting turnover of funds from the Wombold Class Action Settlement. Some debtors have appeared *pro se* and opposed the motions for turnover while other debtors have opposed the Trustees' motions for turnover through counsel. However, many debtors have not filed responses to the motions for turnover, either because they do not oppose the motions or because they may not have received notice of the settlement and/or the motions for turnover.

To ensure that all debtors were afforded due process, the Plaintiff filed on December 26, 2006, a Motion for Authorization of Service by Publication, which motion was granted per Order entered that same date.[4] In accordance with the Court's December 26, 2006, Order, Plaintiff proceeded to effectuate service of the Summons and Complaint on all debtors via publication in

---

[4] Many of the bankruptcy cases involved in this proceeding were closed years ago, and the debtors have since moved. However, the Summons and Complaint in this Adversary Proceeding were served not only on the debtors' last known addresses, but were also mailed to the addresses maintained by counsel for the Wombold Class Action. As explained in the "Final Order Approving Class Action Settlement" entered by the Montana Eighth Judicial District in June of 2006, the "methods employed in distributing Class Notice and updating addresses provided the best notice practicable under the circumstances and were reasonably calculated to communicate actual notice of the litigation and the proposed settlement to Class Members."

10

seven major newspapers throughout the State of Montana. Service of the Summons and Complaint in this proceeding via first class mail to the debtors' last known addresses, as maintained by this Court, along with service via first class mail to the last known addresses as maintained by counsel for the Wombold Class Action, together with service via publication, provided the best notice practicable in this Proceeding.

Several parties have filed answers and cross-claims in response to the Plaintiff's Complaint. The Trustees, the Plaintiff and the Defendant-Debtors, Daniel Edward and Shirley Ann Brown, William Jaszkowiak, Darlene Durand, Thomas Smith, Keith and Tina Sims, Darcy L. and Colleen D. Kohles, Thomas and Pana Schafer, Darlene Hall, Olga Lunde, Robert C. and Teresa A. Stene, Charles T. and Hilda Kopp and Dale L. and Claudia J. Wheeler, through their attorney, James A. Patten, entered into a Stipulation of Facts which was filed with the Court on January 19, 2007. The Stipulation of Facts was approved that same date and provides as follows:

1. All of the Debtors identified in Exhibit "A" to the Plaintiff's Amended Complaint in Interpleader filed herein entered into their loans, i.e., executed their loan and collateral documents at a loan closing, with the lender defendants in the *Wombold* state court class action prepetition, i.e., before they filed their respective bankruptcy cases.

2. The spreadsheet forwarded to Defendant Trustees' undersigned counsel by Plaintiff under cover of attorney William Hammer's letter of December 19, 2006, copies of which letter and spreadsheet are attached as Attachment C to the Appendix to this Stipulation, sets forth the loan closing date ("Date of Loan") of each of the loan or loans of the Debtors listed therein as produced to Class Counsel by Associates, which loans were subject to the Wombold Class Action litigation, and also sets forth the bankruptcy case number of each such Debtor listed in that spreadsheet which were produced to Class Counsel by the U.S. Trustee's Office.

11

3.  The Court is asked, pursuant to FED.R.EVID. 201, to take judicial notice of the following pleadings, filings and orders entered into the Wombold Class Action before the state district court, which class action filings are also self-authenticating under FED.R.EVID. 902, and the facts established by the opinion of the Montana Supreme Court resolving an interlocutory appeal from a partial summary judgment order of the state district court that presided over the Wombold Class Action: (a) facts established by the Montana Supreme Court's resolution of an appeal in the class action, *Wombold v. Associates Financial Services Company of Montana, Inc.*, 2004 MT 397, 325 Mont. 290, 104 P.3d 1080, and (b) the First Amended Class Action Complaint filed March 13, 2002, Appendix Attachment A ("Appendix A"); the Final Order Approving Class Action Settlement filed June 7, 2006 ("Final Order"), Appendix, Attachment B ("Appendix B"); the "Stipulation for Settlement," Exhibit 4 to the Final Order, Appendix B, pp.75-91; and the Notice of Proposed Class Action Settlement and Settlement Hearing ("Notice of Proposed Class Action Settlement"), Exhibit 1 to the Final Order, Appendix B, pp.48-55.

4.  Neither Defendant-Debtors, Daniel Edward Brown and Shirley Ann Brown, Darcy L. Kohles and Colleen D. Kohles, nor Darlene Hall, nor Olga Lunde, nor Robert C. Stene and Teresa A. Stene, nor Charles T. Kopp and Hilda Kopp, nor Dale L. Wheeler and Claudia J. Wheeler scheduled either their interest in the Wombold Class Action claim or individual claims against the lender who were defendants in the state court Wombold Class Action litigation in their bankruptcy schedules before their bankruptcy cases were first closed.

Also, the Trustees and the Plaintiff entered into a Stipulation that was filed with the Court on January 25, 2007.  The Stipulation resolves pending issues between the Defendant/Trustees and the Plaintiff in the above-captioned adversary proceeding. The Stipulation is designed to streamline the case procedurally and enable the Court to move more quickly to a decision of the

merits of the competing claims of the Debtors listed on Exhibit "A" to the Amended Interpleader Complaint and the Defendant/Trustees to the interpleaded funds at issue in this action. By Order entered January 26, 2007, the Court approved all provisions of the Stipulation, except for paragraph 2D dealing with the fees and costs in the sum of $17,011.07 requested by Plaintiff's counsel. The Court will consider approval of the above fees and costs by later order.

Furthermore, Robert G. Drummond, the Standing Chapter 13 Trustee, has resolved all issues regarding turnover between himself and the Chapter 13 debtors. Consistent therewith, Mr. Drummond filed an "Amended Chapter 13 Trustee's Motion to Dismiss Chapter 13 Defendants" on February 13, 2007, requesting that the following Debtors be dismissed from this Adversary Proceeding on the basis that Mr. Drummond, as Trustee, had determined that the settlement funds were insufficient to justify reopening the bankruptcy, administering the funds, and filing a new final report. Class Counsel has apparently been directed to pay out funds on behalf of these Debtors directly to the Debtors[5]:

      04-63141 Herbert Blazier
      02-40566 Dan S. Carlson
      99-42860 Matthew J. Foster
      04-63056 Trina Garza
      02-41685 Sandra Gregory
      95-52032 Edna Hagen
      00-43122 David A. Hayter
      02-41977 Keith Johnson
      99-51538 David Muniz
      00-51139 Robert Murphy
      05-62073 Rockne Osterhoudt
      99-20279 Donna Roark
      02-60316 Jayleen Salter
      98-11260 Revalie Salyers
      02-40557 Jill Southard

---

[5] Interestingly, none of the identified debtors are listed as defendants on Exhibit A to the Amended Complaint in Interpleader.

98-42992 Vickie Stanley
        01-32797 John S. Stordahl
        02-41446 Annette Toole
        00-41929 Jeffrey Wohler
        02-60768 Jim L. Yager

Mr. Drummond also requests, in this Motion filed February 13, 2007, that the following Chapter

13 Debtors be dismissed from this Adversary Proceeding on the basis that stipulations have been

filed with the Bankruptcy Court directing either Class Counsel or the Clerk of the Bankruptcy

Court to pay funds to the Debtors and/or the Trustee, pursuant to Stipulations approved by the

Court[6]:

        02-60359 Dwight Agrimson
        98-41594 Cora A. Bonney
        05-60671 Lori Engen
        01-41698 William C. Farrell
        02-30426 Richard J. Gray
        98-10076 Edward R. Hampton
        01-32126 Susan A. Hightower
        02-10670 Bonnie L. Marak
        03-63224 Tammie S. Marquardt
        00-42117 Robert M. Medina
        96-42154 Jack H. Merritt
        04-60316 Judy A. Miller
        01-40789 Barbara Orr
        03-60184 John M. Pritzl
        98-12096 Paul Raynock
        05-61535 Lloyd G. Sampson
        00-42163 Marie C. Thomas
        98-11114 Gerald J. Weidner
        98-32924 Teresa R. Zaharko

        Mr. Drummond's February 13, 2007, Motion was, after notice of an opportunity to

respond, granted by Order entered February 27, 2007.  Consequently, Mr. Drummond and the

---

        [6] Of this group of Chapter 13 debtors, only Hampton, Hightower, Medina, Merritt, Orr and
Weidner are identified as defendants on Exhibit A attached to the Amended Complaint in
Interpleader.

Chapter 13 Debtors listed above have been dismissed from this Adversary Proceeding.

In the interim, the Chapter 7 Trustees, through counsel, filed on January 29, 2007, the pending "Motion for Summary Judgment and Interpleader Award of Entire Wombold Settlement Proceeds to Bankruptcy Estates". At a hearing held January 30, 2007, the Court heard statements regarding the pending Motion for Summary Judgment from attorney Steven Johnson, who appeared on behalf of the Trustees. The Court also heard comments from attorneys James A. Patten (attorney for the Defendant-Debtors, Daniel Edward and Shirley Ann Brown, William Jaszkowiak, Darlene Durand, Thomas Smith, Keith and Tina Sims, Darcy L. and Colleen D. Kohles, Thomas and Pana Schafer, Darlene Hall, Olga Lunde, Robert C. and Teresa A. Stene, Charles T. and Hilda Kopp and Dale L. and Claudia J. Wheeler), R. Clifton Caughron and Randy Winner. The Court also heard testimony from Leonard and Carole Wortman, Christopher and Debra Shea and Richard Stevens, all *pro se* Defendant-Debtors.

The parties at the January 30, 2007, hearing agreed that disposition of the pending Motion for Summary Judgment will govern resolution of this Adversary Proceeding and the pending motions for turnover filed by the Chapter 7 Trustees in various Chapter 7 bankruptcy cases.[7] The Court would note at this juncture that one of the Trustee's motions for turnover was heard on November 15, 2006. *See In re Johnson*, Case Number 03-60911-7. In *Johnson*, the Court entered a Memorandum of Decision and Order on January 23, 2007, denying the trustee's request for turnover on the basis that because the debtors had disclosed the existence of the class action lawsuit against Associates at line 33 of Schedule B, the Trustee was deemed to have technically

---

[7] According to the Chapter 13 Trustee, all turnover motions in the Chapter 13 cases have been resolved by stipulation.

15

abandoned such asset under 11 U.S.C. § 554(c).  *In re Johnson*, — B.R. —, 2007 WL 431591

(Bankr. D. Mont. 2007).  Based upon statements made by the Trustees, it appears that *Johnson*

was the only bankruptcy associated with this Adversary Proceeding where the debtors disclosed

the existence of the class action lawsuit in their schedules.[8]  However, if it comes to light, while

the Court is entering separate orders on the pending motions for turnover filed in the individual

Chapter 7 bankruptcy cases, that the Wombold Class Action lawsuit was listed in a particular

debtor's or debtors' schedules, the Court will follow its prior ruling in *Johnson*, and deny the

particular motion for turnover.

 Following the January 30, 2007, hearing, the Court entered an Order on January 31, 2007,

denying an Amended Motion for Class Certification filed December 11, 2006, by attorney Patten

on behalf of the Defendant-Debtors, Daniel Edward and Shirley Ann Brown and all others

similarly situated.  The Court also advised parties in interest that they had through Friday,

February 9, 2007, to file briefs in opposition to the Trustees' Motion for Summary Judgment.

 The Court has received four separate written objections to the Trustees' Motion for

Summary Judgment.  The written objections were filed by: (1) Richard Stevens, *pro se*; (2)

attorney John L. Mohr on behalf of Darrel S. Arensmeyer and Anna A. Arensmeyer; (3) attorney

James A. Patten on behalf of Kenneth J. Herman, Claudette F. Herman, G. Beverly Petti, Marsha

L. Kirchner, Donald Bailey, Margaret Bailey, Gloria Chamberlain, Larry Chamberlain, Daniel

Brown, Shirley Brown, Darlene Durand, Darlene Hall, William Jaszkowiak, Olga Lunde,

Thomas Smith, Robert Stene, Theresa Stene, Charles Kopp, Hilda Kopp, Dale Wheeler, Claudia

---

[8]  In many of the listed cases, the class action lawsuit was not disclosed because the
bankruptcies were filed, and closed, prior to the date the class action lawsuit was filed.

Wheeler, Keith Sims, Tina Sims, Colleen Kohles, Darcy L. Kohles, Thomas Schafer and Pana Schafer; and (4) attorney Amber Summers on behalf of Gary Bolton. The time to respond to the Defendant/Trustees' Motion for Summary Judgment has expired and the matter is ready of decision. After carefully considering all the facts and pleadings in this case, the Court finds in favor of the Defendant/Trustees. This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law.

## *DISCUSSION*

Summary judgment is governed by FED. R. BANKR. P. 7056. Rule 7056, incorporating FED. R. CIV. P. 56(c), states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)). The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving

17

party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan dissent.) (Citations omitted). *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible in evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues

of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id.*

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

No material facts are disputed with regard to the particular matter at issue on summary judgment. The issue before the Court on summary judgment is purely legal and thus, disposition of this matter on summary judgment is appropriate.

The class action settlements awarded the Chapter 7 debtors named in this Adversary Proceeding are assets of the respective Chapter 7 bankruptcy estates:

> Section 541 defines property of the bankruptcy estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1).

*In re Folks*, 211 B.R. 378, 384 (9th Cir. BAP 1997).

Therefore, assets of the estate properly include any of the debtors' causes of actions. *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001); *see also United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 n. 9 (1983) (Citing to comments made in the House and Senate Reports on the Bankruptcy Code, "[t]he scope of this paragraph [§ 541(a)(1) ] is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6)), and all other forms of property currently specified in section 70a of the Bankruptcy Act. H.R.Rep. No. 95-595, p. 367 (1977); S.Rep. No. 95-989, p. 82 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5868, 6323."); *In re Moore*, 110 B.R. 924, 925- 926 (Bankr. C.D.Cal 1990)(lender liability action by debtor against bank is estate property); *Gandy v. Peoples Bank and Trust Co*., 224 B.R. 340, 345 (S.D.Miss. 1998)(debtor's lawsuit, instituted after discharge, based on allegedly unlawful insurance premiums and interest in connection with a pre-bankruptcy loan, was estate property).

If the cause of action accrued prior to a debtor's petition date, it is an asset that must be scheduled. *Cusano*, 264 F.3d at 947. Unscheduled claims pass to the trustee and are not abandoned, *Welsh v. Quabbin Timber, Inc.*, 199 B.R. 224, 229 (D.Mass. 1996), even though the estate is closed or the plan is confirmed. *Dixon v. First Family Financial Services*, 276 B.R. 173, 181 (S.D.Miss. 2002), *abrogated on other grounds, Reed v. Mississippi Farm Bureau Mut. Ins. Co*., 299 B.R. 804 (S.D.Miss. 2003)("It is axiomatic that, without disclosure of property, it can be neither abandoned nor administered."); *see also, Tilley v. Anixter Inc*., 332 B.R. 501, 508 (D.Conn. 2005)(closure of an estate does not result in abandonment of unscheduled claim); *An-Tze Cheng v KMS Diversified Investments, Inc.*, 308 B.R. 448, 459-60 (9th Cir. B.A.P. 2004)

(trustee may reopen case to administer omitted asset); 11 U.S.C. § 554. Abandonment cannot

occur without notice to creditors and a hearing. *Sierra Switchboard Co. v. Westinghouse Elec.*

*Corp.*, 789 F.2d 705, 709 (9th Cir. 1986).

Moreover, the accrued cause of action is property of the estate even if the debtors were

unaware of the claim when they filed for bankruptcy protection. *See Miller v. Pacific Shore*

*Funding*, 287 B.R. 47, 50 (D.Md. 2002) ("Even a cause of action that the debtor, when filing the

petition, did not know the law granted belongs to the estate. ... Property of the debtor does not

escape the bankruptcy estate merely because the debtor is unaware of its existence.") A later

recovery on the claim is derivative of the cause of action and therefore also property of the estate.

*In re Smith*, 293 B.R. 786, 788 (Bankr. D.Kan. 2003); *In re Ballard,* 238 B.R. 610, 624 (Bankr.

M.D.La. 1999).

To determine when a cause of action accrues, and therefore whether it accrued pre-

bankruptcy and is an estate asset, the Court looks to state law, *Cusano*, 264 F.3d at 947, but it is

important to distinguish between accrual of an action for purposes of ownership in a bankruptcy

proceeding and accrual for purposes of the statute of limitations. *Id.*, *citing, In re Swift*, 129 F.3d

792, 796, 798 (5th Cir. 1997). In *Cusano*, the Court stated:

> We conclude that Cusano's open book account claim accrued for
> bankruptcy purposes to the extent that sums were owed on that account at the
> time he filed his petition. An action could have been brought for those sums
> at that time. Our conclusion is not affected by the fact that limitations on
> such an action had not yet begun to run.

*Cusano*, 264 F.3d at 947. Other courts have used Cusano's "could have been brought"

formulation in determining when a cause of action is property of the estate, obviously because if

a claim "could have been brought" – or here, has been brought – it has accrued. *See, e.g., In re*

21

*Student Finance Corp.*, 335 B.R. 539, 546-547 (D.Del. 2005)(because it is property of the estate under §541(1)(a), "the trustee of a bankrupt debtor may bring any cause of action that the debtor could have brought under state law as of the commencement of the estate"); *In re Bailey*, 306 B.R. 391, 392 (Bankr. D.Colo. 2004)("In a chapter 7 bankruptcy case, any unliquidated lawsuits initiated by a debtor prepetition (or that could have been initiated by the debtor prepetition) become part of the bankruptcy estate....").

Although the inquiry as to when an action accrues is different from an inquiry as to when the statute of limitations begins to run, *Cusano, supra*, "it is often necessary to look to state law on the statute of limitations to determine when a cause of action accrues because accrual rarely is discussed apart from the issue of the running of the statute of limitations." *Matter of Swift*, 129 F.3d 792, 796, fn. 18 (5th Cir. 1997). The reason for this is apparent – it would be a futile act to file a complaint before there was any claim to pursue. In Montana, MONT. CODE ANN. ("MCA") § 27-2-102(1)(a) provides, "a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action ... ." *See also Watkins Trust v. LaCosta*, 2004 MT 144 , ¶ 52, 321 Mont. 432, ¶ 52, 92 P.3d 620, ¶ 52 (statute of limitations does not begin to run until all elements of a claim, including damages, have occurred). In *Bergin v. Temple*, 111 Mont. 539, 111 P.2d 286, (1941), in discussing the meaning of "arose" for purposes of a venue statute, the Court defined "accrued" in a manner similar to the Ninth Circuit in *Cusano* (action accrues when "[a]n action could have been brought for those sums at that time". In *Bergin*, the Montana Supreme Court stated:

> Thus a cause of action arises when it springs up, originates, comes into

being, becomes operative, presents itself. In this connection it is equivalent to the definition of "accrue" by the above authority as "to come into existence as an enforceable claim; to vest as a right; as, a cause of action has accrued when the right to sue has become vested." Obviously if a cause of action exists,– if it has matured or accrued so as to permit suit, it would be impossible to say that the cause of action has not yet arisen.

*Bergin*, 111 P.2d at 289.

Under Montana law and under *Cusano*, a claim accrues when an action can be brought. Applying *Cusano* and *Bergin*, where loan closings occurred pre-petition, and a cause of action has been filed based on pre-petition wrongdoings, then appealed to the Montana Supreme Court, remanded, and pursued to settlement, it "would be impossible to say" that it has not yet accrued. All the elements were in place to bring a lawsuit against Associates at the time the debtors signed their loan papers at the date of their respective loan closings, irrespective of whether the debtors appreciated the legal significance of those events. They had, therefore accrued claims and could have sued immediately after closing for breach of the MCLA for the illegal fees ("points") charged by Associates, or for fraud or misrepresentation by reason of Associates holding out in the loan documents its right to charge and collect those illegal fees.  Nothing in the similar state court decision entered by the Honorable John W. Whelan in *Costello v. Beneficial*, Montana Second Judicial District Court, Case No. DV-03-280 (April 26, 2006), refutes the accrual, *i.e.*, existence, of those clams at the time of loan closing.

Thus, Debtors' claims accrued as of the time that their loans closed, since the events occurring at closing are the very facts upon which the claims were pursued and settled.  Case law from other jurisdictions supports this conclusion.  In *Miller v. Pacific Shore Funding*, 287 B.R. 47 (D.Md. 2002), *aff'd on other grounds*, 92 Fed. Appx. 933 (4th Cir. 2004), the debtors closed

on a loan, and later filed for Chapter 7 protection without scheduling any potential claim against the lenders. The debtors were discharged and the proceeding was closed. Months later, the debtors filed a putative class action in state court alleging violations of the Maryland Secondary Mortgage Loan Law (SMLL), asserting that the lenders routinely charged and collected excessive or unauthorized fees. The action was removed to U.S. District Court, which held that the debtors lacked standing to sue, because the cause of action was the property of their closed bankruptcy estate. On appeal, the Fourth Circuit affirmed, in an unpublished opinion that may be cited under 4th Cir. Local Rule 36(c), again rejecting the borrowers' argument that their statutory lending claim did not accrue at closing, because (according to debtors), it accrued anew upon each mortgage payment:

> This argument, premised solely on the fact that he financed the disputed closing costs rather than paying them in full at closing, misconstrues the character of the closing fees at issue, and fails to recognize the material distinction between interest payments and fees.

> Interest payments are charged on an ongoing basis and do not become a legally enforceable debt until they accrue. For example, as Plaintiffs' counsel recognized at oral argument, if a consumer chooses to pay off the principal of his mortgage at an earlier date than specified in the loan agreement, a lender would not be entitled to collect the unaccrued future interest. The closing costs charged here, on the other hand, even if rolled into the loan principal, become a legally enforceable obligation as soon as the loan is issued. The mere fact that a consumer decides to finance this obligation is of no consequence. If a consumer chooses to pay off his loan principal at an earlier date, the lender would still be entitled to collect the unpaid portion of the fees. Thus, regardless of how the fees are paid – through financing or at closing – they become a legally enforceable debt as of the closing date. Accordingly, Gilbert-Iheme's claims accrued when he signed the closing documents and *paid* the disputed fees, even though that payment was through the expedient of a promissory note.

*Miller v. Pacific Shore Funding,* 92 Fed. Appx. 933, 937 (4th Cir. 2004)(unpublished)(emphasis in original). The Montana Supreme Court has already determined, in the Wombold Appeal, that

24

the points unlawfully charged to these Debtors were fees, rather than interest, that were paid to

Associates at closing and became a legally enforceable and nonrefundable charge. Accordingly,

these claims accrued at closing.

In *In re Ballard,* 238 B.R. 610, 619-620, 622 (Bankr. M.D.La. 1999), the bankruptcy

court for the middle district of Louisiana held that settlement funds for future medical expenses

and for lost future earnings, derived from a cause of action that accrued pre-petition, were

property of the estate:

> It is clear that the debtor here, prebankruptcy, had a legal entitlement to
> make a claim for all damages, including future medical expenses that were or
> would be related to (caused by) the accident. Because of this state law legal
> and/or equitable interest, the property interest became property of the bankruptcy
> estate.

Similarly, in *Matter of Williams*, 197 B.R. 398, 402 (Bankr. M.D.Ga. 1996), the Court noted:

> "A debtor's contingent interest in future income has consistently been
> found to be property of the bankruptcy estate. In fact, every conceivable
> interest of the debtor, future, nonpossessory, contingent, speculative, and
> derivative, is within the reach of § 541." *In re Yonikus,* 996 F.2d 866, 869
> (7th Cir.1993); *See also Neuton v. Danning* (*In re Neuton* ), 922 F.2d 1379,
> 1382-83 (9th Cir.1990).

In a case decided under the prior Bankruptcy Act, the U.S. Supreme Court held that a

postpetition payment is estate property if it is "sufficiently rooted in the pre-bankruptcy past."

*Segal v. Rochelle*, 382 U.S.375, 380 (1966). In a case decided before *Cusano*, the Ninth Circuit

applied *Segal* under the new Bankruptcy Code to determine that the future and contingent

"contract value" of an insurance agent in an Appointment Agreement attributable to pre-filing

services was property of the estate even though no right to collect those amounts had accrued as

of the time of filing. *In re Ryerson,* 739 F.2d 1423, 1426 (9th Cir. 1984); *see also Field v.*

25

*Transcontinental Ins. Co.*, 219 B.R. 115, 119 (E.D.Va. 1998), *aff'd*, 173 F.3d 424 (4th Cir. 1999)(under *Segal*, a cause of action "sufficiently rooted in [Debtors'] pre-bankruptcy past" is property of the estate regardless of whether it has accrued as of the time of filing).

In *In re Sherman,* 322 B.R. 889 (Bankr. N.D.Fla. 2004), the debtor hired an attorney to pursue a employment sexual harassment claim. The debtor later filed bankruptcy, and the estate settled the claim for one, unallocated lump sum. *Sherman,* 322 B.R. at 891. The debtor asserted that the portion of the sum attributable to her postpetition lost future earnings was not estate property. The court disagreed on the basis that the claims were "sufficiently rooted in the pre-bankruptcy past":

> "Pre-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not." *Witko v. Menotte (In re Witko),* 374 F.3d 1040, 1042 (11th Cir. 2004). If claims are "sufficiently rooted in the pre-bankruptcy past," then they will be included as property of the estate. *Id.* (citing *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966)(holding tax refunds for the previous year were property of the estate, even though received post-petition, because all of the predicates for receiving the refunds occurred pre-petition)). Defendant's cause of action against the Company was completely rooted in her pre-bankruptcy past--nothing else had to happen in order for her to assert her claim against it. In her motion for summary judgment, the Defendant admits that the cause of action that was the basis of the settlement accrued pre-petition. (¶ 9), but argues that since the amount of damages for lost future wages were partially incalculable until some time post-petition, they cannot be included in property of the estate.
> . . .
>
> In addition, awards for lost future wages are based on a hypothetical fact situation-- assuming that, but for the injury caused by the Company, the Defendant would have continued with the Company, earning the same amount of money. But, of course, it is possible that even without the Company's bad acts, the Defendant might have taken ill or otherwise been unable to work. Therefore, "what might have happened in the future is merely a way of valuing a pre-petition asset--the cause of action." *Ballard,* 238 B.R. at 622. . . . The harm to the Defendant was complete in August, 2001, when she left her job, which was before she filed for bankruptcy in

26

October, 2001. The Defendant's computation of lost future earnings included as part of the settlement with the Company was merely placing a value on the her pre-petition asset–the cause of action against the Company much like how calculating a tax refund in April is merely placing a value on an asset that was accrued during the prior year.

*Sherman*, 322 B.R. at 893.

These Wombold Debtors' claims are similarly "sufficiently rooted" in their prebankruptcy past – the loans closed and the harm was actionable prepetition. Amounts parceled out based on calculations in administration of the settlement fund do not change that result, even if the calculations refer to interest that may not even accrue if the loan is prepaid. Other courts discussing *Segal* have found that causes of action are "sufficiently rooted" in debtor's prebankruptcy past where the wrongdoing and redressable harm occurred before or at the time of filing, even though other damage was alleged to have occurred postpetition. *See, e.g.*, *In re Alvarez*, 224 F.3d 1273, 1278-1279 (11th Cir. 2000)(noting that a legal malpractice claim arose out of an attorney-client relationship established before filing, and arose out of interactions with the lawyers before filing).

As noted earlier, the Court has received four written objections to the Trustees Motion for Summary Judgment. The first objection filed by Richard Stevens is virtually incomprehensible and appears to assert that the Chapter 7 Trustee in Mr. Richards' bankruptcy caused the Richards to be deprived of property and rights because the Trustee failed to take action against Associates, even though the Richards gave the Trustee no indication whatsoever that the debtors may have had a claim against Associates. Both attorney Mohr, on behalf of Darrell S. and Anna A. Arensmeyer, and attorney Summers, on behalf of Gary Bolton, rely on the case of *Miller v. Pacific Shore Funding*, 287 B.R. 47, for the proposition that interest payments are charged on an

27

ongoing basis and do not become a legally enforceable debt until they accrue. Counsels' reliance on *Miller* is misplaced.

In *Miller*, the debtors obtained a loan from either Pacific Shore Funding or GMAC-Residential Funding Corp., which loan closed in February of 2000. The Millers then filed a voluntary Chapter 7 bankruptcy on January 16, 2001. Although the Millers did not identify any cause of action against either Pacific Shore Funding or GMAC-Residential Funding Corp., the Millers did list Pacific Shore Funding as a secured creditor in their bankruptcy schedules. The Miller's bankruptcy proceeding was closed on April 30, 2001. Thereafter, on January 16, 2002, the Millers and another plaintiff filed a "putative class action" alleging that Pacific Shore Funding or GMAC-Residential Funding Corp. "routinely charged and collected excessive or unauthorized fees in conjunction with loans secured by junior mortgages on the plaintiffs' residences." *Miller*, 287 B.R. at 49. The district court in *Miller* dismissed the plaintiffs' complaint with prejudice, finding that the Millers, as a result of the prior bankruptcy, lacked standing to pursue their cause of action. In reaching its decision, the court in *Miller* reasoned:

> When the Millers obtained their loan from Pacific, they were charged all of the fees and expenses of which they complain. On that date, therefore, almost one year before they filed their bankruptcy petition, "the legally operative facts permitting the filing of [their] claim[ ] came into existence." *Heron,* 361 Md. at 264, 761 A.2d 56. Furthermore, the charges were all expressly identified on the face of the loan documents they signed. Thus, at the closing of the loan, the Millers also had sufficient knowledge of circumstances indicating they might have been harmed. *See O'Hara,* 305 Md. at 302, 503 A.2d 1313. Accordingly, their cause of action under the SMLL accrued no later than February 22, 2000.

> Therefore, the moment the Millers filed their bankruptcy petition on January 16, 2001, all their interests in the instant cause of action became property of the bankruptcy estate. Unless the Millers can show that the claim was exempt from the estate or abandoned by the trustee, they have no standing to bring or pursue it-only the trustee may do so. *See Nat'l Am. Ins. Co.,* 187 F.3d at 441.

28

*Miller,* 287 B.R. at 50-51. Not once does the court in *Miller* state that interest payments are charged on an ongoing basis and do not become a legally enforceable debt until they accrue.

The arguments articulated by attorney Patten in his Objection to the Trustee's Motion for Summary Judgment are more palatable than the argument articulated by attorneys Mohr and Summers. However, Patten's argument is not persuasive to this Court for two reasons. First, Patten asserts that "[t]he claims accrued each and every time [the debtors] made a payment of unlawful points; each payment was a new cause of action." Patten's statement that each payment resulted in a new cause of action confuses the distinction between the accrual of an action for purposes of ownership in a bankruptcy proceeding and accrual for purposes of the statute of limitations. As explained in *Cusano*, 264 F.3d at 948:

> Cusano cannot avoid disclosing on this bankruptcy schedules a claim for an
> unpaid royalties balance, which was ascertainable and collectible when he filed
> his petition, simply because this claim does not accrue for statute of limitations
> purposes until the royalties dry up or payment is refused.

The plaintiffs in the Wombold Class Action lawsuit each had a claim for damages on the date each individual loan was closed because that is the date that the debtors had an ascertainable and collectible claim of damages equating to the "points" or prepaid finance charges, which were determined at the inception of each of the loans, and the premiums for credit insurance and/or charges for other loan add-ons that were not requested by the plaintiffs. The facts in this case are distinguishable from those in *Cusano*, where the Court concluded that "Cusano retain[ed] standing to sue for any royalty payments coming due post-petition." *Cusano,* 264 F.3d at 948.

Finally, Patten's argument seeks to double credit debtors for the "points" charged by

Associates; once at the inception of the loan and then to the extent that the points were paid on a monthly basis.  One of the stated purposes of the settlement was to reimburse the debtors for the points that were added to the loan balances at the inception of the loans.  It does not appear that the gross settlement amount of $25 million bore any connection to particular damages.  Rather, the settlement amount was meant to bring an end to six years of protracted litigation by providing a one-time cash payment to Class Members . . . in exchange for the release of the Class Members' claims against Associates and defenses against enforcement of their loans.  The settlement funds were ultimately distributed according to the strength of the individual claimant's claims against Associates.

For the reasons discussed herein, the Court agrees with counsel for the Trustees that the claims at issue accrued prior to the Defendant/Debtors' bankruptcy petition dates.  Accordingly, the individual causes of action should have been listed in the Defendant/Debtors' schedules.  Other than the Johnsons, the causes of action against Associates were not listed in the Debtor/Defendants' bankruptcy schedules and the Trustees are not deemed to have abandoned assets that were neither listed nor disclosed.  Finally, because the settlement was in exchange for the release of the Class Members' claims against Associates, which claims gave rise to a cause of action prepetition, the Court finds that the funds held by the Clerk of the Court in the account at First Interstate Bank must be distributed to the Chapter 7 Trustees, who will then disburse the proceeds in accordance with the Bankruptcy Code and Rules.  Pursuant to the foregoing Memorandum, the Court will enter a separate Order and Judgment providing as follows:

IT IS THEREFORE ORDERED that the Defendant/Trustees' Motion for Summary Judgment and Interpleader Award of Entire Wombold Settlement Proceeds to Bankruptcy Estates

filed January 29, 2007, is GRANTED; and the Court shall enter a separate judgment in favor of

the Trustees adjudging all settlement funds interpleaded into the registry of the Court as property

of the bankruptcy estates of the Defendant Debtors, and the Clerk of Court is directed to remit

the funds allocated by Class Counsel to the claims of each Defendant Debtor in full to the

Trustees of the respective bankruptcy estates of the Defendant/Debtors.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

31